SEEKAMP's Adm'r. *vs.* HAMMER, *et ux.*—June, 1827.

In the distribution of the personal estate of an intestate, who died leaving a mother, a brother of the whole blood, and four brothers and sisters of the half blood, a sister of the half blood is entitled to *one-sixth* of that estate under the act of 1798, *ch.* 101, *sub ch.* 11; for the terms, "and there shall be no distinction between the whole and half blood," in the 11th *section* of the above act and *sub chapter*, run through the whole of that *sub chapter*.

APPEAL from the Orphans Court of *Baltimore* county. The only question in the case was, whether or not, in the distribution of the personal estate of a deceased intestate, under the act of 1798, *ch.* 101, among brothers and sisters, the half blood were entitled to share with the whole blood; or that the same was to be distributed among the whole blood, to the exclusion of the half blood? It appears by the petition filed by *G. Hammer,* and *Caroline* his wife, (the appellees,) against *Frederick L. E. Amelung,* administrator of *Albertine C. Seekamp,* (the appellant,) and the answer of the said *Amelung,* that *Sophia,* the mother of the said *Caroline,* was formerly married to a certain *Volkman;* that she had two children by the said marriage, viz. *Caroline,* one of the petitioners, and *Amelia,* her sister, both of whom are yet living; that the said *Sophia* afterwards intermarried with a certain *Albert Seekamp,* of which marriage the only issue were *Albert* and *Albertine C. Seekamp;* that *Albert,* the younger, is still living, and *Albertine C.* his sister, is now deceased; that after the death of *Albert,* the elder, the said *Sophia* intermarried with *Frederick L. E. Amelung,* out of which marriage two children have been born, both of whom are yet living, and were born before the death of the said *Albertine C. Seekamp;* that on the death of *Albert Seekamp,* the elder, the said *Albert,* his son, and *Albertine C.* his daughter, succeeded to a large personal property from their said father; that on the 16th of March 1824, the said *Albertine C. Seekamp* departed this life intestate, and a minor, under the age of sixteen years, and that administration was granted upon her estate to the said *Frederick L. E. Amelung;* and, by virtue of such administration, the said *Frederick L. E. Amelung* became possessed of a large personal estate, as appears by his administration account rendered to the orphans court; that after

the payment and allowance for debts, and other expenses inci-
dent to the administration, there is now in his possession, as
administrator aforesaid, a large personal property ready for dis-
tribution; that the time allowed by law for making such distri-
bution has elapsed; and the question presented to the orphans
court was, who were entitled to this personal estate of the said
*Albertine C. Seekamp*, deceased?

The Orphans Court, [*M'Kim, Randall* and *Moore,* J.] were
of opinion, that, before the passage of the act of 1798, *ch.* 101,
by the general assembly of this state, a brother or sister of the
half blood were equally entitled with a brother or sister of the
whole blood, of the personal estate of a deceased brother or sister
dying intestate; and the court did not see any thing in that
statute, to induce them to believe that the legislature intended
to alter this law; and that if the legislature intended to exclude
the half blood from participating equally with the whole blood,
of the personal estate of a deceased brother or sister dying in-
testate, that it would have done it in plain and express language,
which is not to be found in the act of 1798; on the contrary
the court think that the *ninth section* of *sub chap.* 11, of that
act, intended to place them upon the same footing, and to give
them the same rights in this respect; and the court were of the
opinion, that this section intended and did provide for a brother
or sister of the half blood, as well as for a brother or sister of
the whole blood—*Decreed,* that *Frederick L. E. Amelung,*
administrator of *Albertine C. Seekamp,* deceased, make dis-
tribution of the personal estate of the said deceased, according
to this decree, and that he pay and deliver over to the said
*Gottfried Hammer,* and *Caroline* his wife, one-sixth part of
the personal estate of the said *Albertine C. Seekamp,* deceased.

From this decree the respondent appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE,
MARTIN, ARCHER, and DORSEY, J.

*Frick,* for the Appellant, contended, that in the distribution
of personal estate under the act of assembly of 1798, *ch.* 101,
among brothers and sisters, the half blood are not entitled to
share with the whole blood; but that the same is to be distribut-
ed among the whole blood, to the exclusion of the half blood.

He argued that the statutes 22 & 23 of *Car* II, *ch.* 10, and 29 *Car.* II, *ch.* 30, were superseded in this state by the testamentary system, 1798, *ch.* 101—the point was not, therefore, susceptible of illustration by analogy or argument from *British* authorities, but must depend upon the phraseology of our own act. The case before this court is that of brothers and sisters of the whole and half blood, and if governed entirely by the 9th *section* of the 11th *sub chap.* of the act of 1798, *ch.* 101, there is nothing in the point; for that *section* is that "every brother and sister of the intestate shall be entitled to an equal share, and the child or children of a brother or sister of the intestate shall stand in the place of such brother or sister." But the 11th *section* of that *sub chapter*, which is in these words—"after children, descendants, father, mother, brothers and sisters, of the deceased, and their descendants, all collateral relations, in equal degree, shall take, and no representation amongst such collaterals shall be allowed; and there shall be no distinction between the whole and half blood," renders it at least ambiguous and doubtful, whether such was the intention of the legislature; and Chancellor *Killy*, in *Greenfield v Beckett &* *Blake*, says, "the expressions are somewhat obscure," *(a)*.

*(a)* The case here referred to of *Greenfield v Beckett & Blake*, was on a bill filed in the court of chancery in 1817, by the grandchild of a sister of a deceased intestate, who died in 1802, and left no widow or issue, but left a brother and sister, the children of a deceased sister, and the child (the complainant,) of a deceased niece, claiming to come in for his share of the personal estate of the deceased. The question submitted to the chancellor was, whether *Barbara* and her husband, and *T. Bond* and *J. Beckett*, &c. who survived the intestate, were not entitled in preference to the complainant, their nephew and son of *Priscilla*, who died before the intestate? *Killy*, Chancellor, dismissed the bill. In his decree he remarked, "that the testamentary system (1798, *ch.* 101,) repealed the regulations in former acts and statutes only so far as they were inconsistent with that act. The act of 1715, *ch.* 39, taken chiefly from the statute of 22 *Car.* II, *ch.* 10, declared that there should be no representation among collaterals after brothers and sisters children. This provision remains in force, if not altered by the act of 1798, *ch.* 101. I do not perceive any alteration, although the expressions in the 11th *sub ch. s.* 11, are somewhat obscure. The complainant being the grandchild, cannot take *per stirpes*, because the law does not admit of such a representation, he being beyond a brother or sister's child; and he cannot take *per capita* with the brothers and sister's children who are nearer of kin to the intestate."

The 11th *section* of the 11th *sub ch.* as will be seen, after providing for children, descendants, father, mother, brothers and sisters, takes up all collaterals in equal degree, (meaning all *other* collaterals,) and here for the first time varies a material feature in all the former provisions; for it provides that there shall be no representation among *such* collaterals, *and* there shall be no distinction between the whole and half blood.    These words, "*such* collaterals," must mean the last named collaterals, and if it was necessary to say, that among them, there should be no distinction of blood, it follows as a necessary and irresistible implication, that among the collaterals previously named, there must subsist a distinction.    This provision then is confined to such collaterals after brothers and sisters, and is not designed as a general provision to extend to all the preceding sections.    Does not the conjunction *and*, by every rule of grammatical propriety necessarily couple it with the sentence immediately antecedent; and if so, does it not exclusively apply to *such* collaterals as are after brothers and sisters, and expressly determine that only after them the distinction between the whole and half blood shall cease?    Again, if it was intended to embrace all the provisions of the *chapter*, the conjunction, the coupling link, would have been omitted, (if the authors of that law understood even the ordinary rules of grammar,) and the sentence would have stood alone, indisputable in its application.    If it is contended that by the phrase "*every* brother and sister,"in the 9th *section*, the legislature expressly negative any distinction. Have they not also expressly done so by the phrase "*all* collaterals," in the 11th *section*?    Why then should it be necessary to say in terms there shall be no distinction of *half* and whole blood among such collaterals?    And if it is said equally to extend to both the 9th and 11th *sections*, (and by the 9th *sect.* from its very terms there is no distinction,) why should it be necessary to say it in any event?    It stands then, in the *chapter*, as mere surplusage, and can be made to mean nothing more than the law would be without it.    The law, however, did mean to distinguish, and it is only after brothers and sisters, that the distinction is said to cease; yet if every brother and sister of the whole and half blood could take, there was no distinction before.    How then can their be a stopping point

where the distinction is to end, if there was no distinction be-fore? But the legislature did mean to distinguish, and placed the paragraph at the precise distinguishing point—*all collate-rals after brothers and sisters*, and then goes on in the 12th *sect.* to provide "if there be no collaterals," then, &c. It is remarkable too, that this act, at least these sections, are taken *almost verbatim* from the act of 1715, which is in a great mea-sure transcribed from the statutes of 22 and 23 *Car.* but that neither of them contain any thing of the whole and half blood; and that under those statutes they share alike, not by designa-tion of blood, but under the phrase "*every of next of kindred in equal degree.*" See 3 *Bac. Ab.* 75, and the cases there re-ferred to. It cannot be said that the law has no such policy as is here contended for, and that the distinction is feudal and odi-ous. What policy is there for preferring the whole blood in descents and not in distribution? See also *sect.* 16, *sub chap.* 5, of the act of 1798, *ch.* 101, where the whole are preferred to the half blood in granting administrations. What reason can be assigned for this, if the distribution is designed to be equal? The construction here contended for by the appellant, however, renders both parts of the act compatible.

*Mayer* and *Latrobe*, for the Appellees, were stopped by the court.

THE COURT. The expressions, "and there shall be no dis-tinction between the whole and half blood," in the 11th *sec-tion* of the 11th *sub chapter* of the act of 1798, *ch.* 101, run through the whole of that *sub chapter*, and include the whole and the half blood. The court do not think there is any am-biguity in that part of the act.

DECREE AFFIRMED.